UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANN M. ZWICK,

                Plaintiff,

      v.

TOWN OF CHEEKTOWAGA,
JOHN JONES, *individually and in his official capacity
as a police officer for the Town of Cheektowaga*, and
JOHN DOE, *individually and in his official capacity
as a police officer for the Town of Cheektowaga*,

                Defendants.

**DECISION AND ORDER**
21-CV-812S

## I. INTRODUCTION

In this action, Plaintiff Ann M. Zwick alleges that Defendants violated her constitutional rights by arresting and prosecuting her after she was involved in a multi-vehicle traffic accident. Presently before this Court is Defendants' motion for summary judgment. (Docket No. 19.) For the reasons that follow, the motion will be denied.

## II. BACKGROUND

On February 25, 2019, Town of Cheektowaga police officers were dispatched to a multi-vehicle, injury-involved accident on Cleveland Drive in the Town of Cheektowaga. (Defendants' Statement of Material Facts ("Defendants' Statement"), Docket No. 19-3, ¶¶ 1, 2, 6; Plaintiff's Statement of Facts ("Plaintiff's Statement"), Docket No. 22-4, ¶¶ 1, 2, 6.) According to the accident report, Zwick's vehicle was traveling eastbound on Cleveland Drive when it drifted right and rear-ended a parked car, pushing it 65 feet down the road. (Police Accident Report, Docket No. 19-17, p. 1.) It then continued southeast into a sports bar parking lot and hit a second parked vehicle. Id. Following the accident,

1

Zwick was transferred to the Erie County Medical Center ("ECMC") by ambulance, where she was later issued several traffic tickets and arrested for driving while intoxicated (DWI). (Defendants' Statement, ¶¶ 1, 10; Plaintiff's Statement, ¶¶ 1, 10.)

Zwick does not remember the accident or her interactions with police at the scene. (Defendants' Statement, ¶¶ 14, 15; Plaintiff's Statement, ¶¶ 14, 15.)   Her only recall is being at her barbershop earlier that day.   (Deposition of Ann Zwick ("Zwick Dep."), Docket No. 19-21, pp. 6-9.)   The next thing she remembers is waking up in the hospital. Id. pp. 8, 9.   Given Zwick's lack of memory, the account of the incident comes largely from the responding officers and police reports.

When officers arrived on the scene, they encountered Zwick in or near her vehicle, which was still in the sports bar parking lot, behind the second vehicle hit.   (Defendants' Statement, ¶¶ 4-6; Plaintiff's Statement, ¶¶ 4-6.)   This was a short distance from the extensively damaged car in the street.   (Defendants' Statement, ¶ 7; Plaintiff's Statement, ¶ 7.)

Cheektowaga police officers Jakubowski, Wesoloski, and Maggio were the first to arrive.   (Deposition of John Jones ("Jones Dep."), Docket No. 19-20, p. 26.)   Defendant Jones, who was a traffic investigations officer, was one of the last to arrive.   Id. pp. 10, 12, 26.   Defendant Jones was the primary officer investigating what was believed to be a DWI incident.   Id. at p. 12.

Officer Jakubowski spoke with Zwick when he arrived on the scene.   (Deposition of Nicholas Jakubowski ("Jakubowski Dep."), Docket No. 19-22, pp. 4, 5.)   He knew Zwick from having previously socialized with her when she was dating a City of Buffalo

police officer.  Id. pp. 6-7.  Zwick addressed Officer Jakubowski by his first name, but Officer Jakubowski does not recall the substance of their conversations.  Id. pp. 5, 7-8. From his observations, Officer Jakubowski believed that Zwick was intoxicated: her speech was slurred and her breath smelled of alcohol.  Id. pp. 8, 23.  Because Zwick owned the vehicle involved in the accident and was standing by it, Officer Jakubowski believed that she had been driving it, though he did not personally observe her doing so. Id. p. 10.

When Defendant Jones arrived, he received a briefing from Officer Wesoloski and observed that an ambulance was already on site.  (Jones Dep., pp. 27-28.)  The hatch of Zwick's vehicle was open, and Zwick was leaning under it being treated for a compound fracture in her finger.[1]  Id. p. 31.  Defendant Jones questioned Zwick, and she told him that she had been drinking wine at her barbershop but was not drunk.  Id. p. 32.

Due to her injuries, which included head and finger injuries, the ambulance transported Zwick to ECMC.  (Jakubowski Dep., p. 15; Medical Records, Docket No. 23-1.)  Officer Jakubowski followed the ambulance and maintained custody of Zwick at ECMC until Defendant Jones arrived after completing his work at the scene.  (Jones Dep., pp. 29, 33; Jakubowski Dep., pp. 15-17.)  Upon arrival, Defendant Jones told Officer Jakubowski that he was going to arrest Zwick for driving while intoxicated, which Officer Jakubowski already assumed would happen based on the totality of the circumstances at the scene, which included the smell of alcohol, the smashed car, veering

---

[1] Officer Jakubowski recalls Zwick receiving treatment in the back of the ambulance, not at the back of her vehicle.   (Jakubowski Dep., p. 14.)

off the road, and hitting parked cars.   (Jakubowski Dep., pp. 18-19, 20.)

At ECMC, Defendant Jones approached Zwick and informed her that he was investigating her for driving while intoxicated.   (Jakubowski Dep., p. 29.)   Zwick became angry and argumentative and started yelling at him.   (Jakubowski Dep., pp. 28-29; Jones Dep., pp. 34-35.)   Zwick told Defendant Jones that she hated the Cheektowaga police department and felt that it was out to get her.   (Jones Dep., pp. 34-35.)   Officer Jakubowski tried to calm Zwick, but was unsuccessful and thereafter left the hospital. (Jakubowski Dep., p. 29.)

Defendant Jones stayed at the hospital with Zwick for approximately four hours before returning to the station to complete paperwork from the incident.   (Jones Dep., pp. 38, 39-40.)   During that time, he offered Zwick an Alco-Sensor pre-screen test[2] several times, but she refused it.   Id. pp. 12, 13, 17, 22, 32-33, 38; Jakubowski Dep., p. 28; DWI Report, Docket No. 19-8, p. 1.   He also offered to perform field sobriety tests at the hospital or have Zwick submit to a blood test, but she refused those as well.   Id. pp. 17-18, 38; DWI Report, p. 1.

Ultimately, Defendant Jones arrested Zwick, released her on summons, and issued traffic tickets for moving from a lane unsafely, driving at an unreasonable and imprudent speed, driving while intoxicated, and refusing to take a breath test. (Defendants' Statement, ¶ 22; Plaintiff's Statement, ¶ 22; DWI Report, p. 1.)   He also completed a criminal information and complaint.   (Defendants' Statement, ¶ 28; Plaintiff's

---

2 Defendant Jones testified that a pre-screen test is "a box that we ask people if they are willing to blow into, and it gives us a sample of their breath, and in turn would register some sort of percentage to let us know if there is any alcohol in their system."   (Jones Dep., pp. 12-13.)

Statement, ¶ 28.)   After a bench trial, the Honorable Paul S. Piotrowski, Cheektowaga

Town Justice, found Zwick not guilty on all counts.   (Defendants' Statement, ¶¶ 30, 32;

Plaintiff's Statement, ¶¶ 30, 32; Trial Decision, Docket No. 19-19.)

### III. DISCUSSION

Zwick asserts five causes of action for violations of her constitutional rights under

42 U.S.C. § 1983: false arrest; false imprisonment; malicious prosecution; conspiracy to

violate constitutional rights; and failure to train or supervise under <u>Monell</u>.[3]   Defendants

seek summary judgment on each claim.[4]

### A.  General Legal Principles

#### 1.  Summary Judgment

Summary judgment is proper "only where there is no genuine issue of material fact

to be tried, and the facts as to which there is no such issue warrant the entry of judgment

for the moving party as a matter of law."   <u>Kaytor v. Elec. Boat Corp.</u>, 609 F.3d 537, 545

(2d Cir. 2010); <u>see</u> Fed. R. Civ. P. 56 (a).   A fact is "material" if it "might affect the

outcome of the suit under the governing law."   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).   An issue of material fact is "genuine"

---

3 In her complaint, Zwick contends that her first four claims fall under both the Fourth and Fourteenth Amendments, but only the Fourth Amendment applies.   <u>See</u> <u>Albright v. Oliver</u>, 510 U.S. 266, 268, 274, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (rejecting a substantive right under the Fourteenth Amendment Due Process Clause to be free from criminal prosecution except upon probable cause and instead finding that the Fourth Amendment governs "the deprivations of liberty that go hand in hand with criminal prosecutions"); <u>see also</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (holding that where a particular amendment "provides an explicit textual source of constitutional protection" against particular government behavior, "that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims").   Accordingly, the Fourteenth Amendment portions of Zwick's first four claims are dismissed.

4  In the face of Defendants' motion, Zwick agrees that her § 1983 conspiracy claim is subject to dismissal. <u>See</u> Memorandum of Law, Docket No. 22-3, p. 2, n. 2.   She therefore withdraws it.   <u>Id.</u>

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

When faced with a motion for summary judgment, the court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249; see also Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005) ("district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage"). In making this determination, the court must consider the record evidence "taken as a whole," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), and may not "consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence," Kaytor, 609 F.3d at 545.

The court must further "draw all reasonable inferences in favor of the nonmoving party even though contrary inferences might reasonably be drawn." Moll v. Telesector Res. Grp., 94 F.4th 218, 227 (2d Cir. 2024) (quotation marks and citations omitted); see also Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (explaining that, at the summary-judgment stage, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion"). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted). "Only when reasonable minds could not differ as to the import of evidence is

6

summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

In examining motions for summary judgment, the court must refrain from making credibility determinations or weighing evidence: "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). The court also "must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

Yet a party opposing summary judgment must do more than cast a "metaphysical doubt" as to the material facts, Matsushita, 475 U.S. at 586; it must "offer some hard evidence showing that its version of the events is not wholly fanciful," D'Amico v. City of New York, 132 F.3d 145, 49 (2d Cir. 1998). That is, a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252. There must be evidence from which a factfinder could reasonably find for the nonmoving party. Id. Reliance on conclusory statements, unsubstantiated speculation, or mere allegations will not suffice. F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted); Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002).

### 2. Section 1983 and Personal Involvement

Zwick brings her claims under 42 U.S.C. § 1983. Civil liability is imposed under § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must establish that the challenged

conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."   Whalen v. Cnty. of Fulton, 126 F.3d 400, 405 (2d Cir. 1997); see also Hubbard v. J.C. Penney Dep't Store, 05-CV-6042, 2005 WL 1490304, at *1 (W.D.N.Y. June 14, 2005).

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983.   See Haygood v. City of New York, 64 F. Supp. 2d 275, 280 (S.D.N.Y. 1999).   It is well settled in this circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983.   See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).

## B. Defendants' Motion for Summary Judgment

Zwick brings three Fourth Amendment claims against Defendants: false arrest; false imprisonment; and malicious prosecution.   Defendants argue that they are entitled to summary judgment on each of these claims, primarily because there was probable cause to arrest and prosecute Zwick or because qualified immunity applies.   They further argue that, in the absence of a constitutional violation, they are also entitled to summary judgment on Zwick's Monell claim.   Zwick maintains that the existence of disputed issues of material fact precludes summary judgment in Defendants' favor altogether.

### 1. False arrest/False imprisonment

The Fourth Amendment protects "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."
U.S. Const., amend IV.    To succeed on a Fourth Amendment false arrest/false
imprisonment claim, a plaintiff must prove that (1) the defendant intended to confine the
plaintiff; (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent
to the confinement, and (4) the confinement was not otherwise privileged.    See Willey v.
Kirkpatrick, 801 F.3d 51, 70-71 (2d Cir. 2015) (quoting Broughton v. State of New York,
335 N.Ed.2d 310, 314 (N.Y. 1975)); Nix v. City of Rochester, No. 6:14-CV-06395 (MAT),
2017 WL 3387103, at *5 (W.D.N.Y. Aug. 5, 2017).

"To avoid liability for a claim of false arrest, an arresting officer may demonstrate
that either (1) he had probable cause for the arrest, or (2) he is protected from liability
because he has qualified immunity."    Simpson v. City of New York, 793 F.3d 259, 265
(2d Cir. 2015); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); Walker v. City of
New York, 15 CV 500 (NG)(ST), 2017 WL 2799159, at *3 (E.D.N.Y. June 27, 2017) ("An
arrest is privileged when probable cause exists, and probable cause is, therefore, a
complete defense to a claim for false arrest.").

Probable cause "is a complete defense to an action for false arrest brought under
New York law or § 1983."    Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir.
2012) (per curiam).    A finding of probable cause is made based on the totality of the
circumstances, and should encompass plainly exculpatory evidence alongside
inculpatory evidence to ensure the court has a full sense of the evidence that led the
officer to believe that there was probable cause to make an arrest.    See Illinois v. Gates,
462 U.S 213, 230, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1982); Stansbury v. Wertman, 721

F.3d 84, 93 (2d Cir. 2013).

An officer has probable cause to arrest or detain "'when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'"  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (quoting Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010)).  In assessing probable cause, an officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  Ricciuti v. New York Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).

To determine whether probable cause existed for an arrest, courts "assess whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest."  Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006). It is the plaintiff's burden to establish the absence of probable cause, and whether probable cause existed may be decided as a matter of law, unless the pertinent facts and knowledge of the officer are disputed.  See Nickey v. City of New York, No. 11-CV-3207, 2013 WL 5447510, at *5 (E.D.N.Y. Sept. 27, 2013) ("[W]hen the facts material to a probable cause determination are undisputed, the matter is a question of law properly decided by the [c]ourt.").

Finally, for purposes of a false arrest/false imprisonment claim, "it is irrelevant if ultimately the plaintiff is acquitted of the charges against him because the inquiry is whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest the plaintiff."  Forsythe v. City of Watertown, 5:17-CV-

10

1132 (FJS/TWD), 2020 WL 1274270, at *6 (N.D.N.Y. Mar. 17, 2020) (quotation marks and citations omitted).

Defendants first maintain that they are entitled to summary judgment because probable cause existed for Zwick's arrest.   Defendant Jones arrested Zwick for driving while intoxicated, in violation of § 1192 (3) of the New York Vehicle & Traffic Law. (See Information/Complaint, Docket No. 19-16; Supporting Deposition, p. 1.)   That section provides that "[n]o person shall operate a motor vehicle while in an intoxicated condition." N.Y. Veh. & Traf. L. § 1192 (3).

The parties heavily dispute the existence of probable cause.   Defendants maintain that probable cause to arrest existed.   Zwick maintains that it did not, or at the very least, that genuine issues of material fact on the question exist.   Having drawn all inferences and considered the evidence in Zwick's favor, this Court finds that genuine issues of material fact and credibility preclude summary judgment.

During his deposition, Defendant Jones stated that he believed he had probable cause to arrest and charge Zwick with driving while intoxicated.   (Jones Dep., p. 18.) He reached this conclusion because Zwick was at or near the vehicle that struck two other parked vehicles; Zwick's driver's door was open; the passenger seat and floor of Zwick's vehicle had "belongings" on them; there were no signs in the street that the brakes had been applied before hitting the first vehicle; Zwick smelled of alcohol; Zwick had staggered walk and stance, glassy eyes, and slurred speech; and Zwick was argumentative.   Id. pp. 18-20.   Zwick also told Defendant Jones that she was coming from her salon.   Id. p. 21.

11

These observations are reflected in Defendant Jones's reports.   The DWI Report reflects that the odor of alcohol was present, that Zwick's walk and stance were staggered, that Zwick's eyes were glassy and her speech was slurred, and that she was argumentative.   (DWI Report, p. 1.)

In the supporting deposition, Defendant Jones checked off the following boxes as supporting his conclusion that Zwick was driving her vehicle at the time of the accident: "Defendant near the Vehicle"; "Keys in the Ignition"; "Motor Running"; and "Defendant Injured in Crash."  (Supporting Deposition, Docket No. 19-14, p. 1)   As observations supporting probable cause for Zwick's arrest, Defendant Jones checked off "Odor of Alcoholic Beverage"; "Glassy Eyes"; "Impaired Speech"; and "Impaired Motor Condition." Id.

As additional support for probable cause, Defendant Jones indicated that Zwick told him at the scene that she had consumed three alcoholic beverages, that she had been operating the vehicle, that she was driving from work, and that she would not take a screening test.   Id. p. 2.   Defendant Jones further noted that, at ECMC, Zwick "became belligerent and argumentative telling [Defendant Jones] that her lawyer would eat me for dinner and that [Defendant Jones's] ass would be grass."   Id.

In the Report of Refusal to Submit to Chemical Test, Defendant Jones indicated that Zwick refused to submit to a breath test.   (Report of Refusal to Submit to Chemical Test, Docket No. 19-15.)   That report further contains two narratives concerning Defendant Jones's interactions with Zwick:

> [ZWICK] STATED SHE HAD 3 DRINKS AT AN UNDISCLOSED LOCATION.   [ZWICK] STATED SHE

THOUGHT SHE WAS ON CAYUGA RD. [ZWICK] REFUSED A PRE-SCREEN DEVICE STATING "I DON'T TRUST YOU GUYS." [ZWICK] HAD A STRONG ODOR OF ALCOHOLIC BEVERAGE, GLASSY EYES AND IMPAIRED SPEECH. [ZWICK] WAS BELLIGERENT AND TALKED OVER [DEFENDANT JONES] WHEN MIRANDA AND DWI WARNINGS WERE GIVEN. [ZWICK] NEEDED TO BE TOLD NUMEROUS TIMES WHAT HAPPENED AND COULD NOT UNDERSTAND SIMPLE INSTRUCTIONS.

. . .

[ZWICK] STATED SHE WASN'T TAKING ANY TESTS WITHOUT SPEAKING TO A LAWYER FIRST. HER LAWYER SAID SHE SHOULD TELL US TO FUCK OFF.[5]

Id. (caps in original).

Zwick disputes this evidence. She denies consuming any alcohol on the day of the accident and denies keeping any alcohol in her car. (Zwick Dep., pp. 8, 9.) She notes that no one, including Defendant Jones, saw her driving her vehicle or witnessed the accident. She further contends that many of Defendant Jones's alleged probable-cause observations may reasonably be attributed to the physical injuries she sustained in the accident, rather than to any state of intoxication.

Trial testimony from Defendant Jones himself appears to support this contention. He testified, for example, that Zwick was "in a lot of pain" and "pretty upset" over the compound fracture she suffered to her finger and was visibly shaken from the accident. (Trial Transcript ("Trial Tr."), Docket No. 19-18, pp. 11, 18.) He further testified that making observations about Zwick's speech was "hard to say" because she was "pretty upset," which is a departure from his previous statements that her speech was slurred or

---

5 Zwick apparently spoke to her lawyer at some point while she was at the hospital. (Zwick Dep., p. 32.)

impaired.  Id. p. 11.  Similarly, he stated that Zwick's eyes may have appeared glassy because she had been crying, not necessarily because she had been drinking.  Id. p. 18. He further agreed that the smell of alcohol could have emanated from clothing or some other source.  Id.

The medical evidence could also be viewed as supporting Zwick's position.  It states that Zwick lost consciousness after the accident and suffered retrograde and antegrade amnesia.  (Medical Records, pp. 1-2.) The injuries were such that Zwick remained visibly upset at ECMC, was still in a lot of pain, was "rambling," and could not understand simple instructions.  (Trial Tr., pp. 18, 20; Report of Refusal to Submit to Chemical Test, p. 1.)

Drawing all inferences and viewing all evidence in Zwick's favor, this Court finds that a reasonable jury could determine that Zwick's injuries, rather than intoxication, were the source of any staggered walk or stance, glassy eyes, slurred speech, argumentativeness, or other noted indicia of intoxication, and that such should have been apparent at the scene.

Moreover, Defendant Jones's recollection and credibility are at issue, given several inconsistencies in his statements.  For example, Defendant Jones testified during his deposition that he offered Zwick an Alco-Sensor test and a blood test "numerous times" but she refused both.  (Jones Dep., pp. 17-18, 38-39.)  The same is indicated on the DWI Report.  (DWI Report, p. 1.)  But later in his deposition, Defendant Jones indicated that he had no specific recollection of offering Zwick a blood test, and the report concerning Zwick's refusal indicates that only a breath test was offered and refused.

14

(Jones Dep., pp. 38-39; Report of Refusal to Submit to Chemical Test, p. 1.)   Further still, Defendant Jones testified at Zwick's trial that he never offered Zwick the opportunity to take a chemical test because she was receiving medical treatment at the hospital. (Trial Tr., p. 13.)   And as discussed above, Defendant Jones's trial testimony raised questions about the accuracy of the probable-cause observations relayed in his reports and deposition testimony.

This Court cannot weigh evidence or make credibility determinations at this stage. See Jeffreys, 426 F.3d at 551; Rule, 85 F.3d at 1011.   It must view the evidence in Zwick's favor and determine whether there is a genuine issue for trial, disregarding all evidence favorable to Defendants that the jury is not required to accept.   See Anderson, 477 U.S. at 249; Reeves, 530 U.S. at 150.   Applying these principles, and considering the record as a whole, this Court finds that summary judgment on this claim is precluded due to the existence of disputed issues of material fact and open credibility determinations that only the factfinder can resolve.   In this Court's view, a jury crediting Zwick's evidence and version of events could reasonably find that Defendant Jones lacked sufficient probable cause to arrest her.   Consequently, Defendants' motion premised on the undisputed existence of probable cause must be denied.

This finding also precludes summary judgment on Defendants' second asserted ground—qualified immunity.   "Qualified immunity protects public officials from civil liability 'if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'"   Coggins v. Buonora, 776 F.3d 108, 114 (2d Cir. 2015) (quoting Salim v. Proulx,

93 F.3d 86, 89 (2d Cir. 1996)); <u>White v. Pauly</u>, 580 U.S. 73, 78-79, 137 S. Ct. 548, 196 L Ed. 2d 463 (2017) (per curiam) ("Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (citation omitted)).    Here, there is no doubt that the right to be free from arrest without probable cause was clearly established at the time Defendant Jones arrested Zwick.    See <u>Martinez v. Simonetti</u>, 202 F.3d 625, 634 (2d Cir. 2000) (collecting cases); <u>Golino v. New Haven</u>, 950 F.2d 864, 870 (2d Cir. 1991) ("The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right.").

The entitlement to qualified immunity therefore turns on whether Defendant Jones's probable-cause determination was objectively reasonable.    In this regard, "[a]n officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'"    <u>Jenkins v. City of New York</u>, 478 F.3d 76, 86 (2d Cir. 2007) (quoting <u>Lennon v. Miller</u>, 66 F.3d 416, 423-24 (2d Cir. 1995)).    The essential inquiry is whether it was objectively reasonable for the officer to conclude that probable cause existed.    See <u>id.</u>    If jury the jury resolves the fact and credibility issues outlined above in Zwick's favor, qualified immunity may not apply.    Summary judgment on this basis is therefore also denied.

### 2.  Malicious prosecution

To prevail on a § 1983 malicious-prosecution claim, a plaintiff must demonstrate a Fourth Amendment violation and "(1) the commencement or continuation of a criminal

proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding, and (4) actual malice."  Brooks v. Whiteford, 384 F. Supp. 3d 365, 371 (W.D.N.Y. 2019); see also Kee v. City of New York, 12 F.4th 150, 161-62 (2d Cir. 2021); Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016).

Defendants first seek summary judgment based on the existence of probable cause.  "In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of."  Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994).   This assessment is made based on "facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of arrest."  Vanderwoude v. City of New York, No. 12 Civ. 9046 (KPF), 2014 WL 2592457, at *14 (S.D.N.Y. June 10, 2014) (citation omitted). On this record, the same issues of material fact identified above also inform whether Defendant Jones had probable cause to initiate criminal proceedings against Zwick. Summary judgment on this basis is therefore precluded.

Defendants also seek summary judgment on the grounds that Zwick cannot show actual malice.   To prove actual malice, a plaintiff must demonstrate that the defendant "commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."  Rounseville, 13 F.3d at 630. Malice, which is typically a fact question reserved for the jury, see id. at 631, may be proven circumstantially and "may be inferred from the lack of probable cause," Lowth v.

Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996).   "Thus, if there is a question of fact for probable cause, there is also a question for malice."   Noga v. City of Schenectady Police Officers, 169 F. Supp. 2d 83, 90 (N.D.N.Y. 2001).

As discussed above, there exist genuine issues of material fact relative to probable cause.   Moreover, the record contains evidence that Zwick was difficult or argumentative with Defendant Jones, which a jury could view as improper motive for pursuing a criminal prosecution.   (See, e.g., DWI Report, p. 1 ("[Zwick] stated she hates the Cheektowaga police department because all the officer [sic] want are arrests and care for nobody."); id. (listing Zwick's attitude as "argumentative"); Report of Refusal to Submit to Chemical Test, p. 1 ("[Zwick] was belligerent and talked over [Defendant Jones] . . . ."); id. (recounting that Zwick told Defendant Jones that her lawyer said he should "fuck off"); Supporting Deposition, p. 2 ("[Zwick] became belligerent and argumentative telling [Defendant Jones] that her lawyer would eat me for dinner and that [Defendant Jones's] ass would be grass.")   In other words, a jury could find that the criminal prosecution was initiated in retaliation for Zwick's disrespectful or insulting behavior, rather than out of a genuine desire to see the ends of justice served.   Accordingly, summary judgment is precluded.   See Naim v. City of New York, No. 10-CV-912 (FB) (RER), 2012 WL 2923308, at *3 (E.D.N.Y. July 18, 2012) ("Because malice may be proven circumstantially and a jury may infer malice from the absence of probable cause, the malice element is also a question for the jury."); Belsio v. Cnty. of Erie, 19-CV-215-MJR, 2021 WL 3053386, at *8 (W.D.N.Y. July 20, 2021) (noting that "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment").

18

### 3. **Monell**

As it pertains to municipalities, § 1983 imposes liability only when a municipality's official custom or policy causes an employee to violate an individual's constitutional rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Municipal liability cannot be premised solely on a *respondeat superior* theory, but must be based on constitutional deprivations caused by an officially promulgated, or *de facto*, governmental "custom" or "policy[.]"    Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).    Thus, a municipality will be liable for a § 1983 violation only where the municipality itself was the "moving force" behind the deprivation of a plaintiff's federal rights.    See Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 400, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).    That is, "a municipality will not be held liable solely because it employs a tortfeasor."    Bisignano v. Harrison Cent. Sch. Dist., 113 F. Supp. 2d 591, 601 (S.D.N.Y. 2000).    Consequently, "to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy."    Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995).

Defendants move for summary judgment on Zwick's Monell claim on the sole ground that because probable cause existed for Zwick's arrest and prosecution, no underlying constitutional deprivation occurred.    But as discussed at length above, disputed issues of material fact preclude a finding at this stage that probable cause existed as a matter of law.    Consequently, Defendants' are not entitled to summary

judgment on this basis.

## IV. CONCLUSION

The existence of genuine issues of material fact preclude summary judgment on any of Zwick's remaining claims.    Defendants' motion seeking the same will therefore be denied.    Zwick's § 1983 conspiracy claim will be dismissed by agreement.    Before proceeding to trial, the parties must engage in mediation to determine whether a pretrial resolution of this matter can be reached.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' motion for summary judgment (Docket No. 19) is DENIED.

FURTHER, that Plaintiff's § 1983 conspiracy claim is DISMISSED by agreement.

FURTHER, that this case is REFERRED for alternative dispute resolution under Section 2.1.B of the Plan for Alternative Dispute Resolution in the United States District Court for the Western District of New York ("the ADR Plan").

FURTHER, that the parties shall comply with all relevant requirements of the ADR Plan, which is available at http://www.nywd.uscourts.gov.

FURTHER, that the parties are directed to re-engage in mediation with Michael Brady or a federal-court mediator of their mutual choosing.

FURTHER, that the parties shall conclude their mediation efforts by March 24, 2025.

FURTHER, that the parties must explore consent to proceeding before a magistrate judge in accordance with 28 U.S.C. § 636 (c).    The consent form is available

20

at https://www.nywd.uscourts.gov/forms-3.   The consent process is set forth in Loc. R. Civ. P. 73.   The parties are, of course, free to withhold consent without adverse substantive consequences.   <u>See</u> Fed. R. Civ. P. 73 (b)(2).

FURTHER, that the parties must file a joint written notice concerning the status of mediation and consent by April 7, 2025.

SO ORDERED.


Dated:   February 5, 2025
            Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge